IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW P. COOKE, et al. | : | |
| Plaintiffs, | : | Case No. 05-cv-374 |
| v. | : | Judge Holschuh |
| AT&T CORP., | : | Magistrate Judge Kemp |
| Defendant. | : | |
| | : | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Andrew and Elizabeth Cooke filed suit against Defendant AT&T Corporation, alleging numerous causes of action arising from AT&T's attempts to collect money for long distance services that Plaintiffs neither requested nor used.  This matter is currently before the Court on Defendant's motion for judgment on the pleadings as to Count Three (Consumer Sales Practices Act) and Count Six (Ohio Racketeer Influenced Corrupt Organizations Act) of Plaintiffs' complaint.  (Record at 25).

**I.    BACKGROUND**

Plaintiffs filed suit in response to alleged incessant bill collection efforts by AT&T. Plaintiffs claim that, beginning in January of 2004, AT&T billed them for long distance services that they neither requested, wanted, or used. (Am. Compl. ¶ 5).  Although Plaintiffs attempted to resolve the billing dispute through AT&T's customer service representatives, their efforts were unsuccessful.  Because Plaintiffs disputed the bills, they refused to pay them.  They soon began receiving harassing collection calls and letters.  (Id. at ¶¶ 6-7).  Plaintiffs' demands that AT&T cease the collection calls were also unsuccessful.  (Id. ¶ 8).  Callers refused to identify

themselves or put Plaintiffs in contact with a supervisor. (Id. ¶ 10). Plaintiffs believe they received hundreds of collections calls -- up to eight a day. (Id. ¶ 11).

In March, 2004, Plaintiff Andrew Cooke waited on hold for approximately 45-60 minutes to speak to an AT&T customer service representative to resolve this problem. (Id. ¶ 13). That representative was allegedly unable to correct the billing problem, and was unwilling to stop the telephone calls. Although Plaintiff asked to speak with a supervisor, the representative refused his request. (Id.). Plaintiffs then proceeded to file a complaint with the Public Utilities Commission of Ohio. (Id. ¶ 14).

On April 5, 2004, Plaintiffs received a letter of apology from Andy Green, a representative of AT&T's Customer Care Unit. (Id. ¶ 15). The letter stated that Plaintiffs' account would be credited, leaving a $0.00 balance. (Id.). Although the promised credit was posted to the account, AT&T continued to bill Plaintiffs for additional services. (Id. ¶ 16). Plaintiffs sent a letter to Mr. Green requesting an explanation. Billing temporarily stopped, but recommenced in September, 2004. (Id. ¶ 19).

Since September, 2004, Plaintiffs have received hundreds of additional collection phone calls from AT&T. (Id. ¶ 20). Details of one week's worth of calls are included in the amended complaint. (Id. ¶ 22). While many of the phone numbers are registered as "Out of Area," Plaintiffs are convinced they are from AT&T. (Id. ¶ 23). Plaintiffs contend that at least some of the calls originate from overseas and are made from a variety of phone numbers to cloak the identity of AT&T's collection service. (Id. ¶ 27). The callers allegedly: (1) refuse to provide their complete names; (2) refuse to identify the call country or call center of origin; (3) refuse to identify the corporation that employs them; (4) often refuse to connect Plaintiffs to a supervisor;

and (5) if they agree to contact a supervisor, they put Plaintiffs on hold for a prolonged period. (Id. ¶ 28).

## II. PROCEDURAL POSTURE

After Plaintiffs filed suit in state court, Defendant removed the case to federal court. Defendant filed a motion for judgment on the pleadings as to Count Three (Consumer Sales Practices Act) and Count Six ("Ohio Racketeer Influenced Corrupt Organizations Act") of Plaintiffs' complaint. Since the time the motion was filed, Plaintiffs have filed an amended complaint, dropping the Consumer Sales Practices Act claim, thus rendering the motion for judgment on the pleadings partially moot.[1] The amended complaint, however, reasserts a violation of the "Ohio Racketeer Influenced Corrupt Organizations Act." This Memorandum Opinion and Order is therefore directed solely at that claim.

## III. STANDARD OF REVIEW

Motions for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) are evaluated in much the same way as Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted. See Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998); Ziegler v. IBP Hog Market, Inc., 249 F.3d 509, 511-12 (6th Cir. 2001); Mixon v. Ohio, 193 F.3d 389, 399-400 (6th Cir. 1999). The purpose of a motion under either rule is to test the sufficiency of the complaint. When determining the sufficiency of a complaint, a court will apply the principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

---

[1] The Amended Complaint adds a Fair Debt Collection Practices Act claim, which is the subject of a separate motion to dismiss.

claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Ziegler, 249 F.3d at 512.

When considering a motion for judgment on the pleadings, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. See Grindstaff, 133 F.3d at 421. However, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. Id. The Court will, however, indulge all reasonable inferences that might be drawn from the pleading. See Fitzke v. Shappell, 468 F.2d 1072, 1076-77 n.6 (6th Cir. 1972). Unless claiming fraud or mistake, complaints need not be pled with particularity and require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

**IV. DISCUSSION**

Count Six of Plaintiffs' complaint alleges a violation of Ohio Revised Code § 2923.32, Ohio's Pattern of Corrupt Activities Act ("PCA"). That statute reads, in pertinent part:

> (1) No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.
>
> (2) No person, through a pattern of corrupt activity or the collection of an unlawful debt, shall acquire or maintain, directly or indirectly, any interest in, or control of, any enterprise or real property.

Ohio Revised Code § 2923.32(A). The PCA is patterned after the federal Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, and construed in accordance with it. Board of Trs. Sabis Int'l Sch. v. Montgomery, 205 F. Supp. 2d 835, 854 (S.D. Ohio 2002).

4

To state a valid cause of action under the PCA, a plaintiff must allege:

> (1) conduct of the defendant which involves the commission of two or more of specifically prohibited state or federal criminal offenses;
> (2) the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity; and
> (3) the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise.

Id. (quoting Universal Coach, Inc. v. New York City Transit Auth., Inc., 90 Ohio App. 3d 284, 291 (Ohio Ct. App. 1993)). "[T]he failure of a plaintiff to plead any of the elements necessary to establish a RICO violation results in a defective complaint which cannot withstand a motion to dismiss as based upon a failure to state a claim upon which relief can be granted." Universal Coach, 90 Ohio App. 3d at 291.

Defendant argues that Plaintiffs' PCA claim should be dismissed because: (A) Plaintiffs have failed to allege two or more predicate acts, or criminal offenses; (B) not only have Plaintiffs failed to allege that AT&T has participated in the operation or management of an enterprise but, even more fundamentally, Plaintiffs have failed to allege even the existence of an enterprise.

### A. Predicate Acts

The first element of a PCA claim concerns conduct of the defendant which involves the commission of two or more criminal offenses, or "predicate acts." Predicate acts constituting "corrupt activity" are defined in O.R.C. § 2923.31(I), and include attempted theft, a violation of O.R.C. § 2913.02, as alleged in Count 4 of Plaintiffs' complaint. Plaintiffs note that they have also alleged a violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692. Defendant argues, however, that because the FDCPA is not included in the list of predicate acts constituting "corrupt activity," Plaintiffs have pled only one predicate act.

5

To the extent that each of the hundreds of phone calls AT&T allegedly placed to Plaintiffs' home could constitute a separate incident of attempted theft, the Court finds that, for purposes of a motion for judgment on the pleadings, Plaintiffs have sufficiently pled two or more predicate acts of "corrupt activity."

### B. Existence of An Enterprise

Defendant next argues that Plaintiffs' complaint fails to state a claim upon which relief can be granted because Plaintiffs fail to allege the existence of an "enterprise." Plaintiffs maintain that they have alleged facts which demonstrate that AT&T and its overseas debt collectors constitute an "enterprise" and that AT&T participated in the affairs of that enterprise.

In the Court's view, Plaintiffs' allegations are clearly insufficient to withstand Defendant's motion for judgment on the pleadings. It is undisputed that the complaint does not mention the word "enterprise." The PCA claim simply alleges that AT&T demanded payment for services that Plaintiffs did not request or use, and that its bill collection activities "constitute a pattern of corrupt activity in violation of R.C. 2933.32." (Am. Compl. ¶¶ 45-49). Even viewing the allegations in a light most favorable to Plaintiffs, the complaint fails to allege the existence of an "enterprise."

An "enterprise" is defined by statute as "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity." O.R.C. § 2923.31(C). Ohio courts have held that an "enterprise" consists of "(1) an ongoing organization, formal or informal; (2) with associates that function as a continuing unit; and (3) with a structure separate and apart, or distinct, from the pattern of corrupt activity." State v.

6

Teasley, 10th Dist. Nos. 00AP-1322, 00AP-1323, 2002-Ohio-2384, at ¶ 53.

To the extent that the complaint alleges that AT&T's own agents or employees are engaging in the wrongful debt collection activities, Plaintiffs have failed to plead the existence of an "enterprise." In Flanagan v. Eden, 8th Dist. No. 85252, 2005-Ohio-3133, at ¶ 14, the court held that "[a]lthough a corporation may be a member of an enterprise, the enterprise may not be composed of a corporation and its officers or employees." It will not suffice that a defendant corporation, through its agents or employees, committed the predicate acts in the conduct of its own business. See Whelan v. Winchester Prod. Co., 319 F.3d 225, 229 (5th Cir. 2003).

In their memorandum in opposition to Defendant's motion, Plaintiffs argue that the enterprise consists of "AT&T and their overseas debt collectors, with whom AT&T has yet to identify its affiliation." (Mem. in Opp'n at 4). This implies that Plaintiffs believe that the debt collectors might be independent contractors or employees of a separate company with whom AT&T has a business relationship. However, as the court held in Herakovic v. Catholic Diocese of Cleveland, 8th Dist. No. 85467, 2005-Ohio-5985, at ¶ 27, Plaintiffs' failure to allege "that the association in fact had a shared purpose, continuity, unity, an identifiable structure and some goals separate from the predicate acts themselves," is fatal to their claim. In Javitch v. Capwill, 284 F. Supp. 2d 848, 857 (N.D. Ohio 2003), the court held that the complaint must allege more than just a business relationship in order to constitute an "enterprise" and trigger RICO liability.

Even construing the complaint in the light most favorable to the Plaintiffs and accepting all well-pleaded allegations in the complaint as true, Plaintiffs have failed to adequately plead

the existence of an "enterprise."[2]

### V. CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings as to Count Six (Ohio Racketeer Influenced Corrupt Organizations Act) of Plaintiffs' complaint is **GRANTED**.  Defendant's motion for judgment on the pleadings as to Count Three (Consumer Sales Practices Act) is **DENIED AS MOOT**.  (Record at 25).

**IT IS SO ORDERED.**

Date: March 23, 2007                                                 **/s/ John D. Holschuh**
                                                                     John D. Holschuh, Judge
                                                                     United States District Court

---

[2] Because this deficiency is fatal to Plaintiffs' claim, the Court need not address Defendant's argument that Plaintiffs also failed to allege AT&T's participation in the operation or management of the enterprise.